Eastern District of Kentucky
**FILED**

JUN 2 0 2024

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:24-CR-09-KKC

UNITED STATES OF AMERICA                  PLAINTIFF

V.                  **PLEA AGREEMENT**

**DON V. BRYSON**                  **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Information, charging a violation of 21 U.S.C. § 846, conspiracy to unlawfully distribute controlled substances.

2. The essential elements of Count 1 are:

   (a) That two or more persons conspired, or agreed, to knowingly distribute controlled substances in an unauthorized manner; and

   (b) That the Defendant knowingly and voluntarily joined the conspiracy.

3. The Defendant agrees that the United States would prove the facts described in Paragraph 4 below (the "Factual Basis"), beyond a reasonable doubt at trial. The Defendant also agrees that these facts fairly and accurately describe the Defendant's actions and involvement in the offense for which he is charged, and to which he is pleading guilty, and establish the essential elements of this offense beyond a reasonable doubt. Further, the Defendant agrees that, effective as of the date the Defendant signs this Plea Agreement, and notwithstanding any other subsequent event, including but not limited to

1

the Defendant's failure to plead guilty, the Court's refusal to accept the Defendant's guilty plea, or the Defendant's withdrawal (or attempted withdrawal) of his guilty plea, the "Factual Basis" set forth in this Plea Agreement shall be admissible against the Defendant in any criminal case involving the United States and the Defendant, as: (a) substantive evidence offered by the United States in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the United States on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, the Defendant also agrees not to assert any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including USSG § 1B1.1(a)) that the "Factual Basis" set forth in this Plea Agreement should be suppressed or is otherwise inadmissible as evidence (in any form).

4. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) During the timeframe described in the Information, the Defendant held a medical degree and was formerly a licensed physician in Kentucky. The Defendant had previously entered into an agreed order with the Kentucky Board of Medical Licensure in which he surrendered his medical license following an investigation relating to his prescribing of controlled substances.

    (b) The Talmadge Group, Inc., d/b/a Appalachian Family Medicine ("AFM"), was a putative medical clinic in Paintsville, Kentucky. AFM was owned by J.B. and operated in a building the Defendant owned. Although not registered as a Pain Management Facility under Kentucky law, AFM catered to a significant number of patients who sought prescriptions for opioid pain medications. Patients typically paid a cash fee of $75 for each visit to AFM.

(c) Although no longer a practicing physician, the Defendant worked as a "medical consultant" at AFM. In exchange for his association with (and putative work in connection with) AFM, the Defendant received monthly payments from J.B. as a "consulting fee." The Defendant also received monthly rent payments from J.B. for AFM's use of the building the Defendant owned.

(d) For a significant portion of its existence, AFM did not employ a regular, full-time medical provider. Instead, AFM often used locum tenens providers—that is, providers who worked temporarily at AFM, often for short durations. AFM experienced a high rate of provider turnover, largely because AFM was issuing significant numbers of controlled substance prescriptions under circumstances that made the providers uncomfortable. For example, J.B. and the Defendant imposed limitations on the temporary providers' medical decision-making, including restricting or discouraging the use of urine drug testing and pill counts. J.B. and the Defendant also discouraged the temporary providers from reducing the dosage of patients' prescription pain medications.

(e) Between August 9, 2021, and September 2, 2021, a locum tenens provider named N.H. worked at AFM. As a registrant with the Drug Enforcement Administration ("DEA"), N.H. was authorized to write prescriptions for controlled substances, including Schedule II opioid pain medications. N.H.'s last day at AFM was September 2, 2021. After that date, N.H. did not see any patients at AFM and did not authorize the issuance of any prescriptions using his or her DEA Registration to AFM patients. On September 6, 2021, a new provider, L.H., began working at AFM. L.H. did not hold a DEA Registration and was not authorized to issue controlled substance prescriptions. To enable AFM to continue issuing controlled substance prescriptions to its cash-paying patients, the Defendant agreed with J.B. that AFM would issue controlled substance prescriptions using N.H.'s DEA Registration even though (1) L.H. was the only provider seeing patients at AFM during this time period and (2) N.H. did not authorize the use of his or her DEA Registration for this purpose. Between September 6 and 9, 2021, AFM issued approximately 79 prescriptions for hydrocodone, totaling approximately 6,915 pills, using N.H.'s DEA Registration. The Defendant admits that he knew that issuing controlled substance prescriptions in this manner was improper and fell outside of generally accepted medical standards. On September 8, 2021, J.B. sent a text message to the Defendant stating, in part, that the locum tenens agency who supplied N.H. and L.H. "had figured out we are using [N.H.'s] DEA to continue meds." The Defendant admits that this text message exchange related to his agreement with J.B. to unlawfully use N.H.'s DEA Registration to issue controlled substance prescriptions to AFM patients.

(f) The Defendant admits that the facts described above occurred in and around Johnson County, Kentucky, which is in the Eastern District of Kentucky.

3

5. The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of not more than $1,000,000, and a term of supervised release of at least 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

   (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, manual, will determine the Defendant's guidelines range.

   (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes more than 400KG but less than 700 KG of Converted Drug Weight.

   (c) Pursuant to U.S.S.G. § 2D1.1(c)(7), the base offense level is 26.

   (d) The United States and the Defendant agree that no enhancement under § 3B1.1 should apply.

   (e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

   (f) Pursuant to U.S.S.G. § 4C1.1 and provided that the Defendant does not receive any criminal history points under U.S.S.G. Chapter Four, Part A, decrease the offense level by 2 levels.

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on

4

a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as correctly determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant may seek release pending sentencing under 18 U.S.C. § 3145(c) provided the Defendant complies with appropriate conditions of release as imposed by the Court.

11. The Defendant consents to the forfeiture to the United States, by civil or criminal judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Information and acknowledges and consents to the administrative forfeiture of all right, title, and interest in $16,055.01 seized from Truist Bank Joint Checking account number ending x8121. The Defendant agrees that this property is subject to forfeiture because a nexus exits between the property and the offense to which he is pleading guilty as set forth in the forfeiture allegation of the Information.

The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the property identified

5

herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the real property identified in the Information in any judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. The Defendant further represents that he has no interest in and, thus, agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the following additional assets seized as part of this investigation in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted: 2020 Dodge Ram 2500 Bighorn Edition truck with VIN 3C6UR5DL9LG125286; $39,406.30 seized from Peoples Bank Business Checking account number ending x5401; $2,354.17 seized from Peoples Bank Business Checking account number ending x6301; $66,671.06 seized from Hearthside Bank Individual Checking account number ending x0183.

If the Defendant fails to surrender and forfeit the real property identified for forfeiture in the Information, he consents to the forfeiture of any other property of his up to the amount of the value of the real property, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his/her right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The

Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

12. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

13. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding

$1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial

obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

9

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 6/20/24          By: _____
                           Andrew E. Smith
                           Assistant United States Attorney


Date: 6/14/24              _____
                           Don V. Bryson
                           Defendant


Date: 6/20/24              _____
                           Brandon Marshall
                           Attorney for Defendant

10